IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH WATSON, | Civil Action No. 11 – 281J |
| Plaintiff, | |
| v. | District Judge Kim R. Gibson |
| | Chief Magistrate Judge Lisa Pupo Lenihan |
| JOHN E. WETZEL, Secretary of DOC; DORINA VARNER, Chief Grievance Officer; GERALD ROZUM, Superintendent at SCI Somerset; JOSEPH, Assistant to the Superintendent at SCI Somerset; DAVID HUNTER, Unit Manager at SCI Somerset; DAVID ONSTEAD, Unit Manager at SCI Somerset; JACK LOUGHRY, Business Manager at SCI Somerset; SUSAN DORR, Mailroom Supervisor for SCI Somerset and SCI Laurel Highlands; and DELORES CHANEY, Administrative for SCI Somerset and SCI Laurel Highlands, | ECF No. 24 |
| Defendants. | |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

For the following reasons, it is respectfully recommended that Defendants' Motion to Dismiss (ECF No. 24) be granted in part and denied in part. With the exception of Plaintiff's Eighth Amendment and retaliation claims regarding the denial of personal hygiene products against Defendants Onstead and Hunter, Plaintiff's Complaint should be dismissed in its entirety against the remaining Defendants. It is further recommended that Plaintiff not be permitted to

1

amend his Complaint so as to state a claim against these Defendants as it is clear that granting him leave to do so would be futile.

## II.     REPORT

Plaintiff, Joseph Watson ("Plaintiff"), is a Pennsylvania state prisoner currently incarcerated at the State Correctional Institution at Somerset ("SCI-Somerset"). He initiated this action on December 12, 2011, pursuant to the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983. In his Complaint (ECF No. 4), Plaintiff alleges denial of access to the courts, due process, cruel and unusual punishment, and retaliation claims. *See*, *generally*, (ECF No. 4.) Defendants have filed a Motion to Dismiss for Failure to State a Claim (ECF No. 24) to which Plaintiff has responded in opposition (ECF No. 27). For the following reasons, the Motion to Dismiss should be granted in part and denied in part.

### A.  Plaintiff's Allegations

Plaintiff alleges that prior to March 2010, he held a prison job at SCI-Somerset, which allowed him to support himself and buy necessary items such as personal hygiene products. (ECF No. 4 at ¶ 14.) However, in March 2010, he, along with other prisoners at SCI-Somerset, was temporarily transferred to Muskegon, Michigan for approximately 10 months, returning on May 11, 2011. Id. at ¶¶ 13, 14. Upon his return to SCI-Somerset, he was not reinstated into his job at the prison despite the existence of an alleged contract stating that prisoners transferred to Michigan would receive their jobs back upon their return. Id. at ¶¶ 15, 18, 25. Plaintiff claims that without a prison job, he was unable to afford personal hygiene products and had to go without items such as toothpaste, denture cleaning tablets, denture adhesive, lotion, hair conditioner, deodorant, new razors, a new toothbrush, and an adequate supply of soap. Id. at ¶¶ 14, 20, 21, 27, 29. Plaintiff also claims that he was unable to afford these products because,

upon his return to SCI-Somerset, prison officials discontinued his General Labor Pool ("GLP") allowance[1] because he would not participate in school or programs despite the fact that he was not required to participate in school or programs. Id. at ¶¶ 14, 15, 16, 20, 35. Plaintiff alleges that Defendants' actions were in retaliation for him filing a lawsuit in 2009 accusing prison staff at SCI-Somerset of sexual molestation. Id. at ¶¶ 13, 28.

Plaintiff also alleges that in June 2011, he attempted to file a post-conviction brief to the Superior Court of Pennsylvania but that Defendants interfered with his access to the court by delaying the mailing of his brief and supposedly opening, reading, and making copies of his legal mail. Id. at ¶¶ 42, 43, 45, 46, 48, 50. Plaintiff alleges that the deadline for filing his brief was August 17, 2011, that he gave his brief to prison officials for mailing on July 20, 2011, but that it was not docketed with the appellate court until August 15, 2011. Id. at ¶ 50.

Finally, Plaintiff alleges that on December 6, 2011, Officers Kline and Leleux searched his cell and damaged his radio. Id. at 17.

### B. Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355

---

[1] In accordance with DC-ADM 816, Inmate Compensation, "an inmate must perform assigned work, be a student, or have a physical or mental condition that prevents him/her from being able to work or attend school" in order to receive compensation. DC-ADM 816 § 1(B)(1). "An inmate who is unassigned through no fault of his/her own, because of the lack of assignment, shall be placed into the GLP for a maximum for five days each week, until an assignment is made." DC-ADM 816 § 1(D)(1). In such a case, the inmate will receive GLP compensation but must comply with certain requirements such as "engage in any employment or school assignment offered" and "comply with his/her Correctional Plan." An inmate who chooses not to comply with these requirements "will forfeit GLP compensation until he/she is compliant." DC-ADM 816 §1(D)(2).

U.S. 41, 45-46 (1957)); Ashcroft v. Iqbal, 129 S. Ct.1937, 1949 (May 18, 2009) (citing Twombly, 550 U.S. at 555-57). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. (citing Twombly, 550 U.S. at 556-57).

In Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. Aug. 18, 2009), the United States Court of Appeals for the Third Circuit discussed its decision in Phillips v. County of Allegheny, 515 F.3d 224, 232-33 (3d Cir. 2008) (construing Twombly in a civil rights context), and described how the Rule 12(b)(6) standard had changed in light of Twombly and Iqbal as follows:

> After Iqbal, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1948. The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See* Id. at 1949-50; *see also* Twombly, 505 U.S. at 555, & n. 3.

Fowler, 578 F.3d at 210.

Thereafter, in light of Iqbal, the United States Court of Appeals for the Third Circuit in Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009), set forth the following two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S. Ct. at 1949]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See* Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-11.

In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6). Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing 5A Wright and Miller, *Federal Practice and Procedure: Civil 2d,* § 1357; Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990)). A court may also consider indisputably authentic documents. Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004); Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993); Golden v. Cook, 293 F. Supp.2d 546, 551 (W.D. Pa. 2003) ("[C]ourts are permitted to consider matters of which they may take judicial notice, including records and reports of administrative bodies, and publically available records and transcripts from judicial proceedings 'in related or underlying cases which have a direct relation to the matters at issue.'") (citations omitted).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a section 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See*, *e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

### C. Discussion

**1. Personal Involvement**

Defendants assert that Plaintiff has failed to state a claim against Defendants Wetzel, Dorr, Chaney, Joseph, Rozum, Varner, and Loughry because he has failed to allege that they had any personal involvement in any alleged wrongdoing.

For liability under 42 U.S.C. § 1983, a defendant "must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981)). "Personal involvement can be shown through allegations of personal

direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207. However, alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement; allegations "must be made with appropriate particularity." Id.

Additionally, a supervisory defendant can be held liable if he or she played an "affirmative part" in the complained-of misconduct. *See* Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986) (citing Rizzo v. Goode, 423 U.S. 362, 377 (1976)). In this regard, the Third Circuit Court of Appeals has stated that "a supervisor may be personally liable . . . if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (footnote omitted). Additionally, "[i]t is possible to establish section 1983 supervisory liability by showing a supervisor tolerated past or ongoing misbehavior." Baker v. Monroe Township, 50 F.3d 1186, 1191 n.3 (3d Cir. 1995) (citing Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 724-25 (3d Cir. 1989)). Further, "a supervisor may be liable under § 1983 if he or she implements a policy or practice that creates an unreasonable risk of a constitutional violation on the part of the subordinate and the supervisor's failure to change the policy or employ corrective practices is a cause of this unconstitutional conduct." Argueta v. United States Immigration & Customs Enforcement, 643 F.3d 60, 72 (3d Cir. 2011) (citing Brown v. Muhlenberg Township, 269 F.3d 205, 216 (3d Cir. 2001).

a. Defendants Joseph, Rozum, Varner, and Loughry

Plaintiff's only allegation with respect to Defendant Joseph is that he denied Plaintiff's grievance regarding the discontinuance of Plaintiff's GLP allowance and inability to purchase

hygiene necessities. (ECF No. 4 at ¶ 24; ECF No. 4-1 at 16.) Similarly, Plaintiff's only allegation with respect to Defendant Loughry is that he denied Plaintiff's grievance regarding tampering with Plaintiff's outgoing legal mail. (ECF No. 4 at ¶ 39; ECF No. 4-1 at 9.) Plaintiff alleges that Defendant Rozum upheld Defendant Joseph's response to Plaintiff's grievance on appeal (ECF No. 4 at ¶ 25; ECF No. 4-1 at 17) and that he did not respond to Plaintiff's grievance appeal regarding his legal mail (ECF No. 4 at ¶ 29). Finally, Plaintiff alleges that Defendant Varner, the Chief Grievance Officer, upheld the denial of Plaintiff's grievance regarding his GLP allowance on his final appeal. (ECF No. 4 at ¶ 26; ECF No. 4-1 at 19.)

Importantly for this case, inmates do not have a constitutional right to a prison grievance system. *See* Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977); Speight v. Sims, 283 F. App'x 880, 881 (3d Cir. 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001), stating that "the existence of a prison grievance procedure confers no liberty interest on a prisoner.") Moreover, personal knowledge of constitutional violations cannot be established solely as a result of addressing grievances. *See* Rode, 845 F.2d at 1208. In other words, the denial of a grievance or mere concurrence in an administrative appeal process is insufficient to establish personal involvement. *See* Simonton v. Tennis, 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right."); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct); Manns v. Bledsoe, No. 10-1564, 2011 U.S. Dist. LEXIS 102268, 2011 WL 4048781, at *4 (M.D. Pa. Sept. 12, 2011); Mincy v.

DeParlos, No. 08-0507, 2011 U.S. Dist. LEXIS 31168, 2011 WL 1120295, at *7 (M.D. Pa. Mar. 24, 2011); Wilkerson v. Schafer, No. 09-2539, 2011 U.S. Dist. LEXIS 25916, 2011 WL 900994, at *7 (M.D. Pa. Mar. 14, 2011) (allegations that defendants "should be held liable for due process violations because they should have become aware of them through their review of his misconduct appeals is insufficient to establish their personal involvement in the underlying unconstitutional conduct"); Logan v. Lockett, No. 07-1759, 2009 U.S. Dist. LEXIS 24328, 2009 WL 799749, at *8 (W.D. Pa. Mar. 25, 2009); Croom v. Wagner, No. 06-1431, 2006 U.S. Dist. LEXIS 64915, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11, 2006) (holding that neither the filing of a grievance nor an appeal of a grievance is sufficient to impose knowledge of any wrongdoing); Ramos v. Pa. Dept. of Corr., No. 06-1444, 2006 U.S. Dist. LEXIS 51582, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement). Because this sort of involvement is insufficient to establish personal involvement for liability under Section 1983, Plaintiff's Complaint should be dismissed in its entirety against these Defendants.

    b. Defendant Wetzel

Plaintiff alleges that Defendant Wetzel "re-affirmed" the "contract" made by former Secretary of the Department of Corrections Beard, which called for SCI-Somerset inmates to be reinstated to their prison jobs upon their return from Michigan. (ECF No. 4 at ¶ 15.) However, Defendants assert, and the undersigned agrees, that Plaintiff has not alleged that Defendant Wetzel was responsible for not reinstating Plaintiff into his prison job. Moreover, Plaintiff does not make any allegations which could establish liability on the part of Defendant Wetzel in his

9

supervisory capacity. As such, Plaintiff's Complaint should be dismissed in its entirety against Defendant Wetzel.

In his response in opposition to Defendants' Motion to Dismiss, Plaintiff asserts that Defendant Wetzel was personally involved in the alleged violations because Plaintiff appealed to his office the denial of his grievance regarding the discontinuance of his GLP allowance and his inability to purchase personal hygiene products. (ECF No. 27 at 2.) He asserts that even though Defendant Varner responded on Defendant Wetzel's behalf, Defendant Varner "represented him and had the authority to overturn [the] decision but fail[ed] to do so . . . ." Id. For the reasons stated *supra*, this is insufficient to establish the requisite personal involvement for liability under Section 1983, and Plaintiff's Complaint should be dismissed against Defendant Wetzel for the same reasons.

   c. Defendants Dorr and Chaney

Defendants assert that Plaintiff has failed to allege any personal involvement on the part of Defendants Dorr and Chaney. However, Plaintiff alleges that these two Defendants denied him access to the courts by delaying and/or tampering with the mailing of his post-conviction brief to the Pennsylvania Superior Court. (ECF No. 4 at ¶¶ 42, 50; ECF No. 27 at 3.) As such, Plaintiff has alleged the requisite personal involvement necessary for these two Defendants; however, the undersigned finds that Plaintiff has nevertheless failed to state an access to courts claim upon which relief can be granted.

**2. Access to Courts**

Plaintiff alleges that Defendants denied him access to the courts. Specifically, he assumes that they delayed in mailing his post-conviction brief to the Pennsylvania Superior Court because it was not docketed until 26 days after he turned it over for mailing. He also

speculates that because it took so long to reach its destination Defendants opened his outgoing legal mail, read and made copies of his brief.

Under the First Amendment, prisoners have a right of access to the courts. *See* Lewis v. Casey, 518 U.S. 343 (1996). Importantly, however, where an inmate does not allege an actual injury to his ability to litigate a claim, his constitutional right to access the courts has not been violated. *See* id. at 351-53. An actual injury is shown only where a nonfrivolous claim, or one of arguable merit, is lost. *See* Christopher v. Harbury, 536 U.S. 403, 415 (2003); *see also* Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008).

In this case, Plaintiff's actual claim is that Defendants *interfered* with the mailing of his post-conviction brief to the Superior Court. He merely hypothesizes that because it took so long for his brief to be docketed with that court Defendants must have intentionally delayed in mailing his brief and tampered with his legal mail by unsealing it, reading his brief and making copies of it before it was mailed out. Not only is this pure speculation, but Plaintiff has not even asserted that an injury was caused by this alleged interference, nor could he because Plaintiff admits, and his exhibits confirm, that his brief was timely filed with the Superior Court on August 15, 2011. (ECF No. 4-1 at 8.) For these reasons, Plaintiff's access to courts claim should be dismissed.

3. **Prison Job**

Plaintiff makes a number of allegations concerning the loss of his prison job. He appears to assert that pursuant to the alleged "contract" he was entitled to receive his job back upon his return from Michigan and that the failure to give him his job back was cruel and unusual punishment under the Eighth Amendment. Plaintiff's exhibits demonstrate that there was no contract that required the DOC to reinstate inmates to their job upon their return but that

"Institutions were instructed to place returning inmates into their old positions if available or into positions that were comparable if available" assuming that the inmate was "eligible for employment when they return[ed]." (ECF No. 4-1 at 16.) Plaintiff's exhibits also demonstrate that he was ineligible for employment upon his return because employment placement was made from the GLP and Plaintiff was ineligible for the GLP because he would not participate in "programming." Id. Plaintiff, however, was not forced to participate in programs and exercised his right not to participate, but that choice, by prison policy, placed him in a category ineligible for employment. Id.

    a. Due Process

To the extent Plaintiff attempts to assert that Defendants violated his right to due process by failing to reinstate him into his prison job and discontinuing his GLP allowance unless he participated in programs in which he was not required to participate, Defendants' Motion to Dismiss should be granted and Plaintiff's claim should be dismissed with prejudice because he has no constitutionally protectable interest in maintaining prison employment or receiving GLP compensation. *See* James v. Quinlan, 866 F.2d 627, 629-30 (3d Cir. 1989); Bryan v. Werner, 516 F.2d 233, 240 (3d Cir. 1975) ("We do not believe that an inmate's expectation of keeping a particular prison job amounts either to a 'property' or 'liberty' interest entitled to protection under the due process clause."); Fidtler v. Pa. Dep't of Corr., 55 F. App'x 33, 35 (3d Cir. 2002) (inmate refused participation in adult education program and was refused "idle pay" but there is no interest in receiving idle pay which is protected by the Due Process Clause); McCoy v. Chesney, No. 95-2552, 1996 U.S. Dist. LEXIS 3172, 1996 WL 119990, at *2-3 (E.D. Pa. Mar. 15, 1996) (finding that plaintiff had no liberty or property interest in idle pay).

    b. Cruel and Unusual Punishment

Plaintiff appears to argue that Defendants' failure to reinstate him into his prison job violated the Eighth Amendment. In order to state a violation of the Eighth Amendment based on conditions of confinement, Plaintiff must prove that Defendants acted with deliberate indifference to deprive him of the "minimal civilized measures of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981); *see also* Wilson v. Seiter, 501 U.S. 294, 298 (1991). Prison "[c]onditions must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment." Union Cnty. Jail Inmates v. Di Buono, 713 F.2d 984, 997 (3d Cir. 1983) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). However, the loss of a prison job, regardless of the reason, does not amount to cruel and unusual punishment. *See* Clark v. Maryland Dept. of Pub. Safety and Corr. Serv., 316 F. App'x 279, 281 (4th Cir. 2009) ("[A]s prisoners do not have a constitutionally protected right to work while incarcerated, termination from a prison job does not constitute an Eighth Amendment violation."); Ivey v. Wilson, 832 F.2d 850, 955 (6th Cir. 1987); Fox v. Taylor, No. 04-1257, 2005 U.S. Dist. LEXIS 21045 (D. Del. Sept. 27, 2005) (no Eighth Amendment claim for loss of prison job); Roach v. Kligman, 412 F. Supp. 521, 527 (E.D. Pa. 1976) (no Eighth Amendment claim for failure to provide higher wages in prison job so as to afford personal hygiene products and legal materials); *see also* Rhodes, 452 U.S. at 347-49 (state actions that limit jobs and educational opportunities do not constitute punishments under the Eighth Amendment, must less punishments that inflict unnecessary and wanton pain)). As such, Defendants' Motion to Dismiss should be granted on this ground.

    c. Retaliation

Also with respect to his prison job, Plaintiff argues that Defendants retaliated against him by not reinstating him into his prison job and forcing him to participate in programs in order to

be eligible for his GLP allowance and employment even though he was not required to participate in such programs. He alleges that Defendants did this because of a lawsuit he had filed in this Court in 2009, wherein he alleged that he was sexually molested by prison officials at SCI-Somerset.

It is well settled that retaliation for the exercise of a constitutionally protected activity is itself a violation of rights secured by the United States Constitution, which is actionable under Section 1983. Rauser v. Horn, 341 F.3d 330 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990). In order to prevail on a retaliation claim, a plaintiff must show three things: (1) that the conduct in which he engaged was constitutionally protected; (2) that he suffered "adverse action"[2] at the hands of prison officials; and (3) that his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct. Rauser, 241 F.3d at 333 (adopting Mount Healthy Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). Once a plaintiff has made his *prima facie* case, the burden then shifts to the defendant to prove by a preponderance of the evidence that he or she "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." Rauser, 241 F.3d at 334 (incorporating Turner v. Safley, 482 U.S. 78, 89 (1987)).

The undersigned finds that Plaintiff has failed to state a plausible retaliation claim such that dismissal is warranted. While the filing of a lawsuit is a protected activity under the First Amendment, *see* Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997); Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981), and the refusal to reinstate a prisoner into his prison job may be sufficient to deter a prisoner of ordinary firmness from exercising his constitutional

---

[2] An adverse action is one "sufficient to deter a person of ordinary firmness from exercising his rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).

rights, Plaintiff's exhibits belie any claim that Defendants did not reinstate him into his job in retaliation for filing the aforementioned lawsuit. Instead, it is clear that Plaintiff was not eligible for prison employment because he did not comply with his Correctional Plan to attend certain programs, a condition to employment eligibility. *See* (ECF No. 4-1 at 16, 17, 19.) While it was Plaintiff's own choice not to participate in such programs, Defendants simply carried out prison policy when they decided not to reinstate Plaintiff into his prison job. As such, it is clear that Defendants would have made the same decision not to reinstate Plaintiff into his job even absent Plaintiff's 2009 lawsuit. Consequently, Defendants' Motion to Dismiss should be granted on this ground.

### 4. Personal Hygiene Products

Plaintiff complains that he cannot afford personal hygiene products because Defendants would not reinstate him into his prison job and discontinued his GLP allowance. He alleges that Defendants Hunter and Onstead denied him personal hygiene products from May 2011 and throughout 2012, in retaliation for the aforementioned lawsuit and that such denial is a violation of the Eighth Amendment.

#### a. Cruel and Unusual Punishment

As previously noted, the Eighth Amendment is violated when an inmate is deprived of "the minimal civilized measure of life's necessities." Rhodes, 452 U.S. at 347. Courts have held that those minimal necessities include provision for basic hygiene. *See*, *e.g.*, Penrod v. Zavaras, 94 F.3d 1399, 1406 (10th Cir. 1996) (refusal to provide toothpaste, leading to gum bleeding and receding and tooth decay states Eighth Amendment claim); Young v. Quinlan, 960 F.2d 351, 363 (3d Cir. 1992) (requiring prisoner to request permission to wash hands, receive toilet paper, or drink water states an Eighth Amendment claim); *see also* Garcia v. Kimmell, 381 F. App'x 211,

215-17 (3d Cir. 2010). To successfully plead an Eighth Amendment violation, an inmate must allege both an objective element – that the deprivation was sufficiently serious, and a subjective element – that the prison official acted with deliberate indifference. Wilson, 501 U.S. at 298.

Notwithstanding that Defendants did not address Plaintiff's Eighth Amendment claim in their Motion to Dismiss, the undersigned finds that Plaintiff has sufficiently stated a plausible claim against Defendants Hunter and Onstead such that dismissal is not warranted at this stage. *See* (ECF No. 4 at ¶¶ 23, 27-30; ECF No. 27 at 10-11.)

   a. Retaliation

Plaintiff alleges that Defendants Hunter and Onstead would not provide him with personal hygiene products in retaliation for the aforementioned lawsuit. The undersigned finds that Plaintiff has also sufficiently stated a plausible retaliation claim against Defendants such that dismissal is not warranted. *See* id. However, the undersigned notes that because retaliation claims can be easily fabricated, courts must view prisoners' retaliation claims with sufficient skepticism. Plaintiff should be aware that he faces a high burden in demonstrating that Defendants Onstead and Hunter failed to provide him with personal hygiene products in retaliation for his 2009 lawsuit. Specifically, Plaintiff must demonstrate the crucial third element of a retaliation claim, causation, which requires Plaintiff to prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *See* Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007); Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997)). The undersigned notes that neither Defendant Onstead nor Defendant Hunter are Defendants in his 2009 action before this Court; however, because the filing of a lawsuit is protected activity under the First Amendment, and because the failure to be

16

provided with personal hygiene products for over a year may be sufficient to deter a prisoner of ordinary firmness from exercising his constitutional rights, Defendants' Motion to Dismiss should not be granted on this ground.

### 5. Claims Regarding Plaintiff's Radio

Defendants asserts that Plaintiff's claims stemming from Officers Kline and Leleux's search of Plaintiff's cell and subsequent damage to his radio should be dismissed pursuant to the doctrine of collateral estoppel because these issues were adjudicated in Case No. 3:09-cv-87 and appealed to the Third Circuit Court of Appeals in Watson v. Sec'y Pa. Dep't of Corr., 436 F. App'x 131 (3d Cir. 2011). Defendants are mistaken as that case did not concern the incident at issue here or anything in connection with Plaintiff's radio. However, all of Plaintiff's claims stemming from this incident are currently being litigated before this Court in Case No. 3:12-cv-35. Indeed, Plaintiff does not dispute such a fact. (ECF No. 27 at 9.) Consequently, all of these claims are duplicative and should be dismissed as frivolous. *See* McWilliams v. Colorado, 121 F.3d 573, 574 (10th Cir. 1997).

### 6. Amendment of Complaint

The Court must allow amendment by the plaintiff in civil rights cases brought under § 1983 before dismissing pursuant to Rule 12(b)(6), irrespective of whether it is requested, unless doing so would be "inequitable or futile." Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); *see also* Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (asserting that where a complaint is vulnerable to dismissal pursuant to 12(b)(6), the district court must offer the opportunity to amend unless it would be inequitable or futile). The undersigned is cognizant of these holdings, but find that allowing for amendment by Plaintiff would be futile. A careful review of the record commands that Plaintiff, even garnering all the

liberalities that accompany his *pro se* status, fails to state claims under § 1983 for which relief may be granted against all Defendants except for Defendants Onstead and Hunter in connection with the denial of personal hygiene products.

## III. CONCLUSION

For the reasons stated above, it is respectfully recommended that Defendants' Motion to Dismiss be granted in part and denied in part. With the exception of Plaintiff's Eighth Amendment and retaliation claims regarding the denial of personal hygiene products against Defendants Onstead and Hunter, Plaintiff's Complaint should be dismissed in its entirety against the remaining Defendants. It is further recommended that Plaintiff not be permitted to amend his Complaint so as to state a claim against these Defendants as it is clear that granting him leave to do so would be futile.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule of Court 72.D.2, the parties are allowed fourteen (14) days from the date of service to file objections to this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated: January 9, 2013

/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan
Chief United States Magistrate Judge

cc: Joseph Watson
    EF-9383
    SCI Somerset
    11600 Walters Mill Road
    Somerset, PA 15510-0001
    *Via U.S. Postal Mail*

Counsel of Record
*Via ECF Electronic Mail*